**NATIONAL LABOR RELATIONS BOARD**

v.

**GEORGE D. AUCHTER CO. et al.**

No. 14537.

United States Court of Appeals
Fifth Circuit.

Jan. 15, 1954.

A. Norman Somers, Asst. Gen. Counsel, Elizabeth W. Weston, Atty., David P. Findling, Assoc. Gen. Counsel, George J. Bott, General Counsel, Dean E. Denlinger, Attorneys, National Labor Relations Board, Washington, D. C., for petitioner.

Edwin C. Coffee, Harry G. Kincaid, Jacksonville, Fla., Knight, Walrath, Kincaid & Young, Jacksonville, Fla., Coffee & Coffee, Jacksonville, Fla., for respondent Carpenters Dist. Council of Jacksonville and Vicinity.

Before HUTCHESON, Chief Judge, and RUSSELL and RIVES, Circuit Judges.

RUSSELL, Circuit Judge.

The three respondents, George D. Auchter Company, Northeastern Florida Chapter of the Associated Contractors of America and Carpenters District Council of Jacksonville and Vicinity, hereinafter referred to respectively as Auchter, A. G. C. and Council, were each charged with certain unfair labor practices violative of the National Labor Relations Act, as amended, 29 U.S.C.A. § 151 et seq. The Labor Board sustained these charges and entered an order[1] which it now asks this court to enforce.

A. G. C. is a local, loosely knit association of general contractors, of which Auchter is a member. Council, an affili-

1. Reported at 102 N.L.R.B. 79.

ate of United Brotherhood of Carpenters and Joiners of America, is a local autonomous labor organization whose membership is composed of eight locals of United Brotherhood within the Jacksonville area. On September 27, 1950, A. G. C. and Council entered into an agreement which, after reciting that A. G. C. wished to employ qualified workmen and that Council maintained an employment service and had available an ample supply of skilled workmen, contained the following provision, sometimes hereinafter referred to as the "first opportunity clause":

"Now, Therefore, the Contractors do agree to give the Local the first opportunity to supply their skilled mechanics for carpentry work provided that if such labor requirements are not supplied within forty-eight (48) hours after request, or if the men furnished on request are not qualified to perform their duties in the opinion of the Contractors, then the Contractors shall be free to obtain their labor requirements otherwise."

The members associated with A. G. C. were not individually bound by this agreement as it was understood that it would be binding only upon such members who accepted and ratified it. Auchter did accept and ratify the agreement and considered itself bound by it. The agreement contained no provision as to its duration, and, insofar as it appears from the record, it was in force and effect on October 25, 1950, and thereafter at all times pertinent to this controversy.

G. W. Kirby was a member of Carpenters Local No. 1778, Columbia, South Carolina, and was also a member of the International Association of Machinists. He had been employed by Auchter as a millwright, but had not become a member of any of the local labor organizations represented by Council. He voluntarily left this job in July, 1950. Though he thereafter made application for re-employment, Auchter, while desiring his services, refused employment because Kirby could not secure a "referral" or clearance from the Council.

The controlling questions presented here are whether there is adequate support in the evidence for the Board's finding that the charges were timely filed; that the A. G. C. and Council agreement of September 27, 1950, as understood and enforced by the nominal parties thereto and Auchter, was an illegal union-security agreement, the maintenance and enforcement of which constituted, as to Auchter and the A. G. C. a violation of Section 8(a) (3) and (1) of the Act, and as to the Council a violation of Section 8(b) (2) and (1) (A) [2] of the Act, and whether, as a result of such agreement and the employment practices under it, there was discrimination against Kirby. The evidence before us requires an affirmative answer to each of these questions.

The original charges were filed April 23, 1951, and served upon Council and Auchter on April 25th and 26th, respectively. The important date is that of a meeting between Kirby and A. A. Pittman, business representative of Council, in which Kirby sought a job referral so that he could go back to work for Auchter. Pittman refused to grant the request for the reason that Kirby was a member of both the carpenters union and the machinists union. There was a dispute as to whether this meeting was October 23rd, as testified by Pittman, or October 25th, as testified by Kirby. Kirby's testimony is corroborated by other evidence tending to establish this as the correct date. The crediting of this evidence by the trial examiner, accepted by the Board, finds substantial support in the record. For this reason, we overrule respondents' contention as to the jurisdiction of the Board to issue a complaint.

Actually, at the time of this denial, it was not the practice of Council to issue job referrals to applicants, but it was

2. 29 U.S.C.A. § 158.

necessary for a member of a foreign local to secure clearance from Council before one of the constituent locals would issue a job referral to him. Pittman made it clear to Kirby that so long as he persisted in retaining his membership in the machinists union the services of Council would not be available to him. Notwithstanding this, Kirby went to the job where Auchter was engaged and, telling the superintendent, Sides, of his conversation with Pittman, asked the superintendent to give him employment on his machinists card. The superintendent stated that he would like to have Kirby but he was afraid that if he hired him on his machinists card there would be trouble with the carpenters local union and that all of the men would be pulled off of the job. He acknowledged that he had requested Pittman to send Kirby over. Pittman testified that Sides called him a few days later and told him that Kirby had applied to him for a job as a millwright. During that conversation he told Sides that Kirby was not eligible for employment because he had not produced the proper credentials. Several further attempts were made by Kirby to either secure a clearance from Council or to obtain employment from Auchter without a clearance. All of these attempts were futile for Auchter would not employ him without a clearance and Council would not give him a clearance as long as he retained his machinists card.

In an effort to justify this action, Council contends that Kirby never presented evidence that he was a paid-up member of a foreign local and furthermore that Pittman was without authority to refer an applicant to a place of employment. Auchter contends that Kirby never applied to it for a job as a millwright, but only sought to be employed as a machinist for which no jobs were available. The evidence leaves no doubt that Pittman knew that Kirby was a member of a foreign carpenters local. The question of Kirby's credentials was never discussed during the several conferences Pittman had with Kirby. The only reason Pittman ever gave Kirby for refusing him a job referral was his dual union membership. Without clearance from Council, Kirby was not eligible for a job referral from any of the constituent locals. There was never any misunderstanding between these two men as to what Kirby wanted or as to the reason Council refused to clear him for a job. It is equally clear that Auchter had a job available for Kirby but denied him employment solely because he was unable to secure a clearance from Council. The fact that Kirby asked to be hired on his machinists card does not alter the fact that the only reason Auchter ever gave for refusing him employment in any capacity was his inability to obtain approval from Council, and this with full knowledge of the reason Council was withholding its approval. In fact, Sides told Pittman that Kirby had applied to him for a job as a millwright. These afterthought defenses were properly overruled by the Board in view of the positive evidence which controverts them. From the foregoing, and other evidence, it is clear that the quoted provision of the agreement of September 27th, 1950, and the employment practices thereunder, furnished the basis for the denial by Auchter of employment to Kirby.

■ Council urges that since the constitution of United Brotherhood, under which it operates, prohibits dual union membership under penalty of expulsion from the union, it was justified in denying Kirby the benefits of its employment service while he was in violation of that provision. In support of this contention, Council relies upon § 8 (b)(1)(A) of the Act, supra, which provides that the unfair labor practice prohibited by that section shall not be construed to impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein. We do not pass upon the right of Council to enforce this provision of its constitution, but we agree with the Board that when a first opportunity clause in a contract is em-

ployed as a means of discrimination against a recalcitrant member and he is thereby denied employment under conditions present here such conduct is in violation of the Act. As stated by the Board, "* * * when a labor organization undertakes to supply an employer with workmen, it violates Section 8(b)(1)(A) and 8(b)(2) of the Act unless it carries out this undertaking on a nondiscriminatory basis."[3]

It is also urged by Council that the word "employee" as used in § 8(b)(2), making it an unfair labor practice for a labor union to attempt to cause an employer to discriminate against an employee in violation of § 8(a)(3),[4] does not include a job applicant, but is limited to those who are already employed. The word can not be so narrowly construed, but must be considered in its context. The meaning of § 8(b)(2) is that it shall be an unfair labor practice for a union to attempt to cause an employer to violate § 8(a)(3). The refusal of Council to issue Kirby a job referral or to approve him for a referral, caused Auchter to discriminate against him with regard to hire and thereby discourage him from retaining his membership in the machinists union in violation of § 8(a)(3). The application of § 8(b)(2) can not be made to depend upon whether the labor union's efforts to induce the employer to discriminate with regard to hire are successful, for this would place a premium upon the success of the unfair labor practice which it perpetrated. We think that the word "employee" is broad enough to include, and does include, a job applicant who is discriminately denied employment in violation of § 8(a)(3). Cf. Phelps Dodge Corp. v. N. L. R. B., 313 U.S., 177, 61 S.Ct. 845, 85 L.Ed. 1271; John Hancock Mutual Life Ins. Co. v.

N. L. R. B., 89 U.S.App.D.C. 261, 191 F.2d 483.

The Board found that the "first opportunity" clause of the contract, as interpreted and administered by the parties thereto, constituted an invalid union-security agreement which amounted to a closed-shop arrangement and that by continuing this contract in force and effect Auchter and A. G. C. violated §§ 8(a)(1) and (3) and Council violated §§ 8(b)(1)(A) and (b)(2) of the Act, supra. The facts relating to Kirby's efforts to obtain employment sustain this finding, as does other evidence which has not been related in detail. When a copy of the contract was offered in evidence respondents objected to its admission on the basis that the instrument was not complete within itself. Thereafter, testimony was offered tending to show that there was an additional page attached to the original contract on which additional signatures appear. Pittman testified that the missing page contained signatures and also "an additional matter between the two parties." The exhibit was admitted over objection. As it appears in the record it is a complete instrument within itself and it is signed by representatives of A. G. C. and Council. There is no reference in the agreement to any other instrument or addendum which would indicate that the copy of the agreement was not a complete instrument. Under these circumstances the exhibit was properly received in evidence and the Board was justified in considering that it represented the complete written agreement executed by the parties.

The Board's findings are supported by substantial evidence and are otherwise in accordance with law. The petition for enforcement of the order is granted.

Order enforced.

---

3. See N. L. R. B. v. National Maritime Union of America, 2 Cir., 175 F.2d 686; Union Starch & Refining Co. v. N. L. R. B., 7 Cir., 186 F.2d 1008, 27 A.L.R.2d 629; N. L. R. B. v. Reed, 9 Cir., 206 F. 2d 184.

4. 29 U.S.C.A. § 158(a) (3): "It shall be an unfair labor practice for an employer— * * * By discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * * ." (Emphasis supplied.)