**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**TURNER CONSTRUCTION COMPANY and International Union of Operating Engineers, Local 917, AFL, Respondents.**

**No. 12504.**

United States Court of Appeals Sixth Circuit.

Dec. 10, 1955.

Franklin C. Milliken, Washington, D. C. (Theophil C. Kammholz, Chicago, Ill., David P. Findling, Marcel Mallet-Prevost and Owsley Vose, Washington, D. C., on the brief), for petitioner.

Jere T. Tipton and Herbert G. B. King, Chattanooga, Tenn. (John L. Lenihan, Miller, Martin, Hitching & Tipton, Chattanooga, Tenn., on the brief), for respondent.

Before SIMONS, Chief Judge, and ALLEN and STEWART, Circuit Judges.

SIMONS, Chief Judge.

On a petition of the Labor Board for the enforcement of an order based upon a charge of discrimination by Turner in its failure to hire one Carl M. Fisher and the causing of such discrimination by the Union, each of the respondents assails the order and seeks an adjudication setting it aside. The Trial Examiner, who heard the evidence in support of a consolidated complaint, recommended that it be dismissed but the Board, though adopting his findings and conclusions, inferred from the evidence that Turner had discriminated by refusing to employ Fisher and that the Union had caused it to so discriminate.

Turner had been leasing a highlift tractor from Lonas & Company, in April and early May of 1954; Lonas supplied Fisher, its own employee, to operate the tractor; supervision was by Steward, Turner's assistant superintendent, and Cooper, its equipment foreman. In May, Turner purchased a tractor of its own which it put into operation on Monday, May 10th, with an operator named Ridge sent it by the Union. That same Monday morning, Fisher informed Steward that he would be out of work when the Lonas machine left the project; Steward advised Fisher that Turner had already engaged an operator but that he, Steward, would have liked to have Fisher operate the new machine; neither Steward nor Cooper had authority to hire help.

The Lonas tractor completed its work at the close of business on Tuesday, May 11th, when Fisher's employment by Lonas ended. Meanwhile, Turner was dissatisfied with Ridge, who was not a highlift operator. Since Turner had failed to properly describe the machine in securing Ridge from the Union, Kube, its project superintendent, on Wednesday, asked Jones, the Union's business agent, to send a replacement. At the same time he advised Jones of Fisher's availability. Jones told him he had an operator who had been unemployed for some time and inquired whether he would be satisfactory, to which Kube replied: "I don't care as

long as the man is a good operator; that's all I want."

The Union maintained an unemployment roster and would send men to jobs on the basis of their unemployment seniority on it. Both Fisher and the Company knew of it and Fisher had, in the past, availed himself of its facilities. He had not, however, asked to be placed on the existing unemployment list. Kube had not asked Jones for any specific operator and Fisher had not solicited employment from the Company prior to the filling of the job by the employment of Ridge. Though it was customary procedure to call various trade unions for craftsmen, the employer could hire anyone directly. Two weeks later, the Union offered Fisher employment, based upon his unemployment seniority. Fisher rejected the tender because he had again been engaged by Lonas. These are the salient facts upon which the Examiner based his conclusion that neither Turner nor the Union were guilty of discrimination in violation of the prohibitions of the [National] Labor [Relations] Act [29 U.S.C.A. § 151 et seq.], after "observation of the demeanor of witnesses." He found that the Company was free to hire Fisher directly, or request him through the Union, that the Union did not, by threats or promises of any kind, compel the Company to hire someone other than Fisher. He was, therefore, unable to find any basis in the Act for sustaining the complaint against the Union. As to Turner, he concluded it was not necessarily unlawful for an employer to call upon a Union for personnel; that Kube's sole motivation in asking the Union to send him an operator was that he felt obligated to give the Union opportunity to replace Ridge who was sent to it through the Company's own fault concerning the kind of operator it needed. He, therefore, found no discrimination by the Company against Fisher.

The Board rejected the Trial Examiner's recommendations in this respect. A close analysis of its reasons, in the light of the record, discloses the grounds upon which the Board acted. It interpreted Kube's evidence to the effect that he was prepared to hire Fisher unless the Union had someone else available. There is no basis in the record for such interpretation. Turner manifested no choice for replacement, except that the man be competent. The Board accepted the Trial Examiner's conclusion that it is not unlawful for an employer to hire an employee with knowledge of his union membership, but held it unlawful for an employer to hire one employee rather than another or for an employer, as between two union members, to hire one because he alone is sponsored by the Union. Another ground for finding discrimination was that Kube had made no inquiry as to the qualifications of the operator sent by the Union. There is nothing in the record to show that either in previous practice or by custom Turner should have made such inquiry. The uncomplicated fact appears to be that Turner merely relied upon the competency of the man recommended by the Union, when properly advised of the operation to be performed.

The Board's sole reliance is the Supreme Court's decision in Radio Officers' Union v. N. L. R. B., 1953, 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455. The case is not apposite. There, the Union had a rule that any member one month in arrears in dues forfeited his unemployment seniority and the employer was obligated to take men selected by the Union for job openings, and the Union sent only members in good standing. The Supreme Court concluded that the result was to encourage membership in the Union and, so, unlawful discrimination. The Company had offered the discriminatee a job but the Union refused to clear him and told the Company it could not hire him. Here, Fisher had not been offered a job by anyone and there is no evidence that the Union refused to clear him or told the Company it could not hire him.

The present case was reviewed by four of the members of the Board. Member

Murdock vigorously dissented. He argued "to find, as the majority does, that the employer's mere knowledge that such a person is available for employment establishes by a preponderance of the evidence that he has suffered discrimination if the employer seeks another man from the Union seems to me to stretch the term discrimination beyond the breaking point. The Company did no more than to request the Union to correct an error in the referral of an operator for a highlift tractor, an error caused by the Company's own mistake. If the Company's original request for such an operator was not unlawful, and the majority does not contend it was, I do not believe that the Company's follow-through on that request suddenly became unlawful because another person had in the interim indicated a willingness to take the job." With this reasoning, we agree. The concluding argument of the dissenting member is without persuasive response. He points out that if the Union had told the Company to hire Fisher rather than offering to furnish the registered union member who would normally have been referred such member could more realistically complain of discrimination as to him. "Such result approaches a reductio ad absurdum."

It is, of course, the function of the Board to draw inferences but they must be based upon evidence and reasonable. Weight must be given to findings of fact by the trier of facts who has opportunity denied to us and to the Board for determining the credibility of witnesses. Finally, N. L. R. B. v. Pittsburgh S. S. Co., 340 U.S. 498, 71 S.Ct. 453, 95 L.Ed. 479, charges us with the normal and primary responsibility for granting, or denying, enforcement to Labor Board orders and with an obligation to review the entire record. This we have done. Since we think that the Board's order is not thereby substantiated, enforcement will be denied and the order set aside.

Reversed.