NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS AND HELPERS OF AMERICA, A.F.L., DISTRICT NO. 2, Respondent.

No. 235, Docket 23830.

United States Court of Appeals Second Circuit.

Argued March 15, 1956.

Decided April 25, 1956.

Theophil C. Kammholz, General Counsel, David P. Findling, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Samuel M. Singer, Melvin Pollack, Washington, D. C., Attorneys, National Labor Relations Board, for petitioner.

Clif. Langsdale, Kansas City, Mo., for International Brotherhood of Boilermakers, Iron Ship Builders and Helpers of America, AFL, District No. 2, respondent.

Frankle & Ruffo, New York City, for Stephen Mrazek, Walter Smith, Michael Duncovich and Joseph Marin, the charging parties. Philip J. Ruffo, Max H. Frankle, New York City, on the brief.

Before FRANK, LUMBARD and WATERMAN, Circuit Judges.

FRANK, Circuit Judge.

The facts are fully stated in the Board's Decision and Order, reported 110 N.L.R.B. 2116. The findings are amply supported by the record as a whole. The respondent company has agreed to comply with the portion of the order directed against it. The Trial Examiner's Intermediate Report and the Board's Decision completely demolish all the respondent union's contentions. We mention but two:

(1) The parties to the collective bargaining agreement are the employer-company and the respondent union, District No. 2. That union is a "subordi-

nate" of an International union; but the International is not a party to the bargaining agreement. The agreement contains provisions which violate the statute, i. e., they prescribe that the employer "shall employ none but building construction members in good standing on all work \* \* \* coming within the jurisdiction of District No. 2. \* \* \*" Such an unlawful discriminatory agreement is not the less so because it applies, as it did here, to members of other local unions which are also "subordinates" of the International. The actual conduct of the respondent union and the employer conformed to the discriminatory provisions and was therefore also violative of the statute. That these provisions and that conduct were authorized or required by the parent union, the International, cannot render them lawful: The "child's" sins are not to be excused because committed in obedience to the commands of the parent; such paternal commands do not nullify those issued by Congress.[1]

█ (2) The Board found that all the respondent union's agreements contain unlawful provisions substantially the same as those before us here; accordingly the Board's Order, which prohibits like conduct anywhere, is not invalidly broad.[2]

Enforcement granted.

LUMBARD, Circuit Judge (concurring).

The company and the union, District 2 of the International Brotherhood of Boilermakers, Iron Ship Builders and Helpers of America, AFL, entered in-

to a contract dated July 1, 1950, to run for three years, the pertinent provisions of which are found in paragraph 1, reading:

"1. The Employer shall employ none but building construction members in good standing in the Union on all work done by or for him on all construction, repair and maintenance work within the Metropolitan area \* \* \* The Employer further agrees that he will demand and see the working cards and Building Trades Quarterly cards of Employees before employing them."

The Board confirmed the finding of the Trial Examiner that four members of Lodge 23 of the Boilermakers Union were refused employment because they were not members of District 2. These acts and the provisions of the contract were obvious and flagrant violations of § 8(a)(3) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (3), which makes it an unfair labor practice for an employer to discriminate in regard to hire to encourage membership in a labor organization.

█ The four charging parties are members of Lodge 23 of the Boilermakers International which limits Lodge 23's work jurisdiction to the Brooklyn Navy Yard. Mrazek unsuccessfully applied at the company's Astoria job several times in December 1952 and on January 5, 1953. Hagan, the company's foreman, told Mrazek that although he needed men he could not put him on without District 2's permission, and this was confirmed by the tenor of Mrazek's talk with District 2's field representative, Graber, in January.

**1.** See, e. g., N. L. R. B. v. Philadelphia Iron Works, Inc., 3 Cir., 211 F.2d 937, 940–944; Communications Workers of America, C. I. O. v. N. L. R. B., 2 Cir., 215 F.2d 835, 838; N. L. R. B. v. George D. Auchter Co., 5 Cir., 209 F.2d 273, 276–277.

The respondent union cites N. L. R. B. v. Del E. Webb Const. Co., 8 Cir., 196 F.2d 702, in which the Eighth Circuit relied, at pages 705–706, on N. L. R. B. v. Reliable Newspaper Delivery, Inc., 3 Cir.,

187 F.2d 547. But, so far as they have pertinence here, those decisions were overruled in Radio Officers' Union of Commercial Telegraphers Union, etc. v. N. L. R. B., 347 U.S. 17, 22–23, notes 2 and 3, 74 S.Ct. 723, 98 L.Ed. 455; N. L. R. B. v. Turner Const. Co., 6 Cir., 227 F. 2d 498, turned on its peculiar facts.

**2.** See, e. g., Bausch & Lomb Optical Company v. N. L. R. B., 2 Cir., 217 F.2d 575, 578; N. L. R. B. v. Lummus Co., 5 Cir., 210 F.2d 377, 381.

Smith, Duncovich and Marin were each refused employment by Hagan on January 8th. Hagan told Smith and Marin that since they were Lodge 23 members and did not have Building Trades Quarterly cards they would have to get the approval of District 2 headquarters. At 14th Street headquarters field representative Graber told them that the Astoria jobs were being held for District 2 members.

On the same day, January 8th, Duncovich received substantially similar advice from Hagan at the Astoria project and from Graber and another field representative at two different District 2 headquarters. There was ample evidence to sustain the finding of the Board and its Trial Examiner that pursuant to its unlawful hiring arrangement the company had discriminatorily refused employment to the four complainants and that District 2 had caused this discrimination.

Thus it follows that by the performance of this discriminatory contract with the company and by causing the company to discriminate against the charging parties, District 2 violated §§ 8(b)(2) and (1)(A) of the National Labor Relations Act.

■ The evidence justified the Board's rejection of District 2's contention that the Board could not issue its complaint because the four complainants were merely fronting for Lodge 23 in a jurisdictional dispute with District 2. Mrazek and Marin were unemployed at the time, and Smith although working elsewhere was receiving $1.20 an hour less than the boilermaker wage scale in effect at the Astoria project. Duncovich also was working elsewhere, but his weekly salary was nearly $50 less than the pay scale on the Astoria job.

■ Of course no provision of the constitution or rules of the International which chartered both District 2 and Lodge 23 could validly determine where and under what circumstances the members of a particular local could apply for and be given jobs by an employer. The

Act is paramount and its provisions may not be whittled away or circumvented by any action of the International any more than by the agreement between the company and District 2 which we here strike down.

For the reasons stated above and in Judge Frank's opinion I concur in granting enforcement of the Board's order.

WATERMAN, Circuit Judge.

I concur with my colleagues in each of the foregoing opinions.