243 F.2d 519
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
E. F. SHUCK CONSTRUCTION CO., Inc., The Associated General
Contractors of America, Seattle Chapter, Inc., The Seattle
Construction Council and Hod Carriers' Building and Common
Laborers' Union Local No. 242, AFL, Respondents.
ASSOCIATED GENERAL CONTRACTORS OF AMERICA, SEATTLE CHAPTER,
Inc., and its affiliate Seattle Construction
Council, Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 15084.
 United States Court of Appeals Ninth Circuit.
 Jan. 15, 1957.
 
 Theophil C. Kammholz, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Arnold Ordman, Morris A. Solomon, Attys., N.L.R.B., Washington, D.C., for petitioner.
 Lycette, Diamond & Sylvester, Lyle I. Iversen, Seattle, Wash., for respondent Associated Gen. Contractors of America.
 Before DENMAN, Chief Judge, CHAMBERS, Circuit Judge, and MURRAY, District Judge.
 DENMAN, Chief Judge.
 
 
 1
 The National Labor Relations Board seeks our enforcement of its order finding the respondent, the Associated General Contractors of America, Seattle Chapter, Incorporated, the Shuck Construction Company, hereafter the Company, and the Hod Carriers' and Building and Common Laborers' Union, Local 242, hereafter the Union, guilty of an unfair labor practice under the Act, 29 U.S.C.A. § 151 et seq., and ordering them to cease and desist therefrom and to make whole one Richard Kieburtz for the damages he sustained from such unfair labor practice. The Company and the Union consented to the Board's order and are not parties here; the Association, hereafter sometimes the respondent, has filed a cross petition for review of the order of the Board.
 
 
 2
 The respondent, an association of employers in the construction business in the Seattle area, negotiates collective bargaining contracts on behalf of its members with the Union. The contract signed by the respondent and the Union in November, 1950, provided, in effect, that the members of the association would grant preferences in employment to members of the Union.
 
 
 3
 In 1953, when the events giving rise to this case occurred, the E. F. Shuck Construction Company was not a member of the respondent association, although its president, Mr. E. F. Shuck, was a member individually. The Shuck construction business was operated as an individual enterprise by Mr. E. F. Shuck prior to 1949, when he incorporated his business. Since that time he has not engaged in the construction business individually, but solely through the company which has since its incorporation paid his dues in the association as a business expense. In 1955, the Shuck membership was transferred from Mr. Shuck individually to the corporate name.
 
 
 4
 In July, 1953, when this contract was in effect between the respondent association and the Union, one Richard Kieburtz, a student at the University of Washington and not a member of the union, sought employment from the Company on the construction of a school for a State of Washington school district. Kieburtz was hired and he offered to join the Union. The Union refused to admit him to membership, and the company thereupon fired him because, as a representative of the Company told him, 'I don't know just what to tell you, kid. We have to go along with the Union on this, or they can make trouble for us.'
 
 
 5
 Thereafter, Kieburtz filed a complaint with the Board.
 
 
 6
 The order of the Board requires the respondent association (1) to cease and desist from maintaining any provision of its contract with the Union 'which conditions the hire of applicants for employment or the retention of employees in employment with any employer whose operations are in or affect commerce upon clearance by the * * * Union', other than a union security arrangement permitted by Section 8(a)(3) of the Act, and (2) to make Kieburtz whole for the loss he suffered by reason of the enforcement of the unlawful union security provision.
 
 
 7
 It is not questioned that the provision of the contract which confers preferences in hiring upon union members is a violation of the Act if applied so as to affect interstate commerce. See, e.g., N.L.R.B. v. Daboll, 9 Cir., 1954, 216 F.2d 143, certiorari denied 1955, 348 U.S. 917, 75 S.Ct. 299, 99 L.Ed. 719.
 
 
 8
 Concerning the first provision of the order, respondent argues that it is not an employer within the meaning of the Act, and therefore that the Board was without power to enter an order against it.
 
 
 9
 There is no doubt that an employer's association such as the respondent which negotiates collective bargaining contracts on behalf of its members who engage in interstate commerce is an employer for the purpose of enabling the Board to order it not to maintain a provision of a contract affecting commerce which violates the Act. Red Star Express Lines of Auburn v. N.L.R.B., 2 Cir., 1952, 196 F.2d 78; N.L.R.B. v. George D. Auchter Co., 5 Cir., 1954, 209 F.2d 273; N.L.R.B. v. Waterfront Employers of Washington, 9 Cir., 1954, 211 F.2d 946. There is ample evidence in the record before us that the operations of the members of the respondent association have a substantial effect on interstate commerce.
 
 
 10
 The respondent next argues that any unfair labor practice committed by it in signing the contract occurred when the contract was made in 1950, and that since the complaint herein was not filed until 1953, the present action is barred by the six-month statute of limitations. 29 U.S.C.A. § 160(b) . We disagree. The mere retention of such a clause in a contract in force between the parties is a continuing unfair labor practice even where there is no attempt to enforce it because so long as it remains a part of the contract it 'tends to encourage membership in a labor organization' in violation of Section 8(a)(3). Red Star Express Lines v. N.L.R.B., supra, 196 F.2d at page 81; N.L.R.B. v. Gottfried Baking Co., 2 Cir., 1954, 210 F.2d 772, 780.
 
 
 11
 Respondent next contends that the savings provision of the contract to the effect that any provision thereof 'held' to be invalid under the Act should be deemed inoperative where commerce was affected, removes the offending union security provision from the contract in any case where the Board has jurisdiction to act. We reject this contention. First, the savings clause states that a provision 'held' invalid shall be deemed deleted from the contract. Use of the word 'held' indicates that an invalid provision is operative in interstate commerce until it is held invalid by the Board or by a court. Secondly, the provision is fatally vague because it does not state which provisions are suspended, and does not tell an unlearned employee which provisions are to be stricken where interstate commerce is involved. It has been uniformly held that such a provision does not exclude unlawful provisions from interstate commerce. Red Star Express Lines v. N.L.R.B., 196 F.2d at page 81; N.L.R.B. v. Gaynor News Co., 2 Cir., 1952, 197 F.2d 719, 723-724, affirmed Radio Officers Union of Commercial Telegraphers Union v. N.L.R.B., 1954, 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455. We conclude, therefore, that the Board properly ordered the respondent to cease maintaining the provision conferring the unlawful hiring preference on union members in the contract in so far as it affects interstate commerce.
 
 
 12
 As to the second provision of the order, the authority of the Board to make the association financially responsible for the discrimination against Kieburtz, the initial question concerns the membership of the E. F. Shuck Construction Co. in the respondent association. Respondent contends that the Company was not a member, although its president was, and therefore that it, the respondent, did not bargain on behalf of the Company and cannot be held for anything the company did or did not do. Concededly the fact that the Company in discharging Kieburtz considered itself bound by the contract cannot be taken alone as conclusive on the issue of its membership in the association so as to bind the respondent. Considered together with the following facts, however, we think the Board could properly infer as it did that the Company was a de facto member of the respondent: (1) E. F. Shuck individually was a member of respondent before he incorporated his business in 1949; (2) thereafter he no longer did any construction work individually and his sole connection with the construction business was through the Company which carried his name and of which he was president; (3) since 1949 the cost of maintaining a membership in the Association was paid by the Company as a business expense. We think that the evidence warrants the inference of the Board that the Company maintained its membership through the agency of its president.
 
 
 13
 In view of the whole record, therefore, we decline to set aside the Board's resolution of this question of fact. Universal Camera Corp. v. N.L.R.B., 1951, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456.
 
 
 14
 The next question is whether the Board could properly assert jurisdiction over the construction of a local school for a state school district by a local contractor. There is ample evidence in the record that the Company during the year in which the school was constructed engaged in other construction jobs affecting interstate commerce. Nothing in the record suggests that at the time of the construction of the school or thereafter the Company had abandoned its interstate business. Regarding the operation of the Company as a whole, we think that the Company's business so affected interstate commerce that the Board could assume jurisdiction over its labor relations. The situation is identical with that in our decision in N.L.R.B. v. Reed, 9 Cir., 1953, 206 F.2d 184, 187.
 
 
 15
 The next question is whether the retention by the respondent association of the unlawful provision in the contract the enforcement of which by the Company and the Union injured Kieburtz renders the respondent financially responsible to Kieburtz, for his loss. Respondent concedes that it is a 'person' under Section 10(c), 29 U.S.C.A. § 160(c), against whom the Board may issue a cease and desist order. Red Star Express Lines v. N.L.R.B., supra. Respondent contends, however, that while this section subjects 'persons' to cease and desist orders, it allows the Board to impose financial liability only an 'employer or labor organization.'
 
 
 16
 The provision of the statute upon which this contention is apparently based reads in pertinent part as follows:
 
 
 17
 29 U.S.C.A. § 160(c): '* * * If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter: Provided, That where an order directs reinstatement of an employee, back pay may be required of the employer or labor organization, as the case may be, responsible for the discrimination suffered by him * * *.'
 
 
 18
 No authority is offered for respondent's view that it may be considered an employer for one purpose and not for another. This distinction, which is not called for by the wording of the Act, would greatly increase the difficulty of giving complete relief to persons injured by violations of the Act. We hold, therefore, that an employers' association which commits an unfair labor practice may be held financially responsible for the injury caused thereby. See N.L.R.B. v. Waterfront Employers of Washington, supra.
 
 
 19
 Respondent contends, however, that the Waterfront Employers case, supra, where this court imposed financial liability on an employers' association, is distinguishable because there the association 'was actually paymaster for the employers and actually stood in the relation of employer to the employees', while here the respondent only signed the contract on behalf of its members, and thereafter acquiesced in the retention of the unlawful union security provision therein. In the Waterfront Employers of Washington case, the employers' association had signed on behalf of its members an agreement with a union for the maintenance of a hiring hall on terms giving union members a preference in hiring in violation of the Act. The Association paid a part of the expenses of the hiring hall and was paymaster for its members; it had nothing directly to do, however, with discrimination against the two men for whom the Board sought money damages. This court said:
 
 
 20
 'Having agreed to and maintained this discriminatory hiring arrangement, (the employers' association) is accountable for its results. It was in strict accordance with this hiring arrangement that (the two workmen) were denied employment as longshoremen.'
 
 
 21
 211 F.2d at page 954.
 
 
 22
 It is clear from a reading of the opinion in the Waterfront Employers' case that the essential fact on which the financial liability of the association was predicated was its maintenance of the unlawful preference clause. This essential fact is present in the instant case: We have pointed out that the maintenance by the respondent in the contract of this provision is an unfair labor practice because it tends to encourage membership in a labor organization in violation of Section 8(a)(3).
 
 
 23
 The association argues, however, that it may disassociate itself from the consequences of its violation of the Act on the ground that although it thereby facilitated the unlawful discharge of Kieburtz, yet since it did not itself order his discharge, or directly control the employment policies of the Company, it may not be held financially responsible merely because it made it possible for the Company and the Union to deprive him of employment. The Supreme Court has said that in the field of labor management relations, as elsewhere, 'a man is held to intend the foreseeable consequences of his conduct.' Radio Officers' Union, etc. v. N.L.R.B., 1945, 347 U.S. 17, 45, 74 S.Ct. 323, 338, 98 L.Ed. 455. So long as the unlawful provision remained a part of the contract which the respondent association signed and continued as an operative agreement with the Union, its enforcement obviously was a 'foreseeable consequence.' Thus in a very real sense, respondent caused the discharge of Kieburtz, and the Board therefore properly held respondent financially responsible for his injury.
 
 
 24
 Finally respondent urges that the order of the Board requiring it to post notices at construction sites of the Company stating that it will no longer maintain the unlawful hiring provision is unreasonable since it does not have access to such sites. The contention is without merit. Employers' associations have on several occasions been required to post such notices. See, e.g., N.L.R.B. v. George D. Auchter Co., supra, enforcing an order of the Board requiring the Northeastern Florida Chapter of the respondent association to post such notices at the job sites of one of its members. 102 N.L.R.B. 881, 887-8 (1953).
 
 
 25
 The order of the National Labor Relations Board is enforced.