275 F.2d 914
 MORRISON-KNUDSEN COMPANY, Inc., Walsh Construction Company
and Perini-Quebec, Inc., Joint Venturers doing business as
Robinson Bay Lock Constructors; Morrison-Knudsen Company,
Inc., B. Perini & Sons, Inc., Walsh Construction Company and
Utah Construction Company, a Joint Venture and Selby
Drilling Corp., Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 78, Docket 25613.
 United States Court of Appeals Second Circuit.
 Argued Dec. 11, 1959.
Decided March 2, 1960.
 
 Gerald DeGarmo, Allen, DeGarmo & Leedy, Seattle, Wash., for petitioners.
 Stuart Rothman, Gen. Counsel, Thomas J. McDermott, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Rosanna A. Blake, Alfred Avins, Attys., National Labor Relations Board, Washington, D.C., for respondent.
 Before LUMBARD, Chief Judge, and SWAN and FRIENDLY, Circuit Judges.
 SWAN, Circuit Judge.
 
 
 1
 Petitioners seek review of a decision and order of the National Labor Relations Board, issued March 4, 1959 and reported as 123 NLRB No. 12, and the Board by cross petition seeks enforcement of its order.
 
 
 2
 The three petitioners were engaged respectively in construction work upon the St. Lawrence Seaway and Power Projects in the vicinity of Massena, N.Y. and within the 'territorial jurisdiction' of Local 545, International Union of Operating Engineers, under contracts with either the United States (Corps of Army Engineers) or the Power Authority of the State of New York. Concededly, they were engaged in commerce as defined in the National Labor Relations Act, 29 U.S.C.A. 152, and the Union and its Local were labor organizations. Two of the three petitioners did business as joint venturers; they are referred to in the Trial Examiners Intermediate Report as Robinson Bay and Massena Intake. None of the three maintained an employment office of its own, and each relied largely upon Local 545 to supply it with employees through the Local's hiring hall at Massena. Many of those supplied were members of the Local; most of the remainder were members of other locals of the International Union, and a few were not members of any union.
 
 
 3
 The Board found, in agreement with the Trial Examiner, that since March 1, 1956, the petitioners 'have engaged in unfair labor practices proscribed by Section 8(a)(3) and (1) of the Act by maintaining in effect an exclusive hiring hall arrangement and practice with Local 545 and International Union of Operating Engineers under which nonmembers of Local 545 were discriminated against by giving preference in referral for employment to members and then to members of other locals and by requiring of nonmembers the payment of weekly fees for work permits as evidence of the Local's consent to their employment, thereby encouraging membership in Local 545.'[1] The Board further held, following its recent Mountain Pacific case,[2] that an employer may enter into an exclusive hiring arrangement with a union provided adequate safeguards against discrimination are prescribed, but found that the petitioners had not provided such safeguards. The Board's order contains the usual cease and desist provisions and, in disagreement with the trial examiner, directs petitioners to reimburse all present and former employees who have unlawfully been required to pay a work permit fee, initiation fees, dues and other moneys to Local 545.[3] Petitioners contend that each of the Board's findings and conclusions is erroneous as not stating a violation on the part of petitioners of section 8(a) (1) and (3) of the Act and as not being supported by substantial evidence on the record considered as a whole. They also contend that, in any event, the provision for reimbursement is punitive rather than remedial, and should not be enforced.
 
 
 4
 In our opinion the evidence in the record as a whole is sufficient to sustain the Trial Examiner's and the Board's conclusion that the hiring hall arrangement and practice was operated in a discriminatory manner in violation of section 8 (a)(1) and (3) of the Act. Harold Blum, a member of another local of the International who applied for work during a slack season, was told by Coville, a business agent of Local 545: 'We have 545 men, they have to go to work first.' Later, after work had become more plentiful, Blum applied again and Coville gave him a work slip after requiring him to show his local book and to pay $2.50 as a weekly permit fee. Morrison, a college student who was not a member of any union and applied for summer work as an oiler, was told by Coville that 'book mem,' meaning union members, had to come first. We agree with counsel for the Board that the experience of Blum and Morrison should be regarded as specific examples of haw Local 545 was operating its hiring hall, rather than as isolated instances of discrimination. The testimony of other witnesses, both those called by the General Counsel and those called by the petitioners, shows the existence of a general policy of preferring members of Local 545, as well as a requirement (not always strictly enforced) that nonmembers pay the weekly license fee, called 'dobie.' When either Robinson Bay or Massena Intake needed men, it would notify Local 545, and men sent by the Local with referral slips would be hired. If a qualified man applied at the project for work he would be told to obtain a referral slip from the Local, or, if the hiring hall was closed, as on Saturdays, permission to hire him would be obtained from the union steward. A similar procedure was followed by Selby, as appears from the testimony of Mr. Kangas.
 
 
 5
 The petitioners contend that giving preference to members of Local 545 over members of other locals of the International is not a violation of the Act. We disagree. No precise authority on the point has been discovered but N.L.R.B. v. International Brotherhood, 2 Cir., 232 F.2d 393, certiorari denied 352 U.S. 909, 77 S.Ct. 148, 1 L.Ed.2d 118, and N.L.R.B. v. Daboll, 9 Cir., 216 F.2d 143, certiorari denied 348 U.S. 917, 75 S.Ct. 299, 99 L.Ed. 719, tend to refute the petitioners' argument. The literal words of the statute also lend support to the view that encouragement of membership in a particular local is unlawful. The dues for members of Local 545 were $4.00 per month for oilers, and.$7.00 per month for operating engineers, while the license fee required of members of other locals and of non-union men was $2.50 per week, that is $10.00 a month. The natural tendency of such differential is to encourage membership in Local 545.[4] Nor can the fact that the constitution of the International required that Local to collect a license fee from members of other locals make a collection of it lawful.[5]
 
 
 6
 While there is some dispute as to the extent of the petitioners' knowledge of the Local's discriminatory practices, it seems clear that at least they knew of the collection of 'dobie.'[6] But regardless of the extent of their knowledge we agree with the Board that an employer may not avoid liability for violations of the Act by the hiring hall when he has turned over to it the task of supplying the men to be employed. The Local acted as agent for the petitioners in selecting the men to be hired. Its discriminatory acts, which unlawfully encourage membership in Local 545, are properly chargeable to the agent's principal as discriminatory acts by it. N.L.R.B. v. George D. Auchter Co., 5 Cir., 209 F.2d 273, 277; N.L.R.B. v. F. H. McGraw & Co., 6 Cir., 206 F.2d 655, 639-640.
 
 
 7
 Since we have concluded that the findings of discrimination are supported by the evidence, it is unnecessary to pass upon the Board's contention based upon the controversial issue raised by the Mountain Pacific case.[7]
 
 
 8
 We turn now to the propriety of the remedy. The cease and desist provisions of the order should be enforced. But we deny enforcement to the provision of the Board's order requiring 'the Respondents to refund to present and former employees, the work permit fees, initiation fees, dues and other monies the employees * * * have been required to pay.' We think this remedy to be unduly harsh and penal in nature.
 
 
 9
 Our scope of review over the N.L.R.B.'s choice of the remedy to be applied is a narrow one. The standard is set forth in Virginia Electric & Power Co. v. N.L.R.B., 1943, 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568, in which the Supreme Court stated that the remedy selected 'should stand unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act.' See also N.L.R.B. v. Seven-Up Bottling Co., 1953, 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377; N.L.R.B. v. Warren Co., 1955, 350 U.S. 107, 76 S.Ct. 185, 100 L.Ed. 96. However, we have recognized in applying this principle that 'the validity of reimbursement orders necessarily depends upon the peculiar circumstances of each particular case.' N.L.R.B. v. Adhesive Products Corp., 2 Cir., 1958, 258 F.2d 403, 409; see N.L.R.B. v. Shedd-Brown Mfg. Co., 7 Cir., 1954, 213 F.2d 163, 170-171. And, as other courts have stated, 'since the powers conferred on courts of appeal by the Act are equitable in nature, they 'may be invoked only if the relief sought is consistent with the principles of equity.' N.L.R.B. v. Kingston Cake Co., 3 Cir., 1953, 206 F.2d 604, 611.' N.L.R.B. v. American Dredging Co., 3 Cir.,276 F.2d 286; Local 357, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. N.L.R.B., D.C.Cir., 275 F.2d 646. Cf. N.L.R.B. v. Local 60, United Brotherhood of Carpenters and Joiners of America, AFLCIO, 7 Cir., 1960, 273 F.2d 699.
 
 
 10
 In the circumstances of this case it seems to us that the Board's remedy goes far beyond merely effectuating the policies of the Act. The remedy would require the employers to pay back not only the permit fees paid by non-union workers and members of other locals, but to reimburse long standing members of Local 545 for the dues paid by them. There is no evidence of any kind in the record to suggest that, but for the illegal conduct of the employers and the union, any of the Local 545 members would have resigned from the local and thereby avoided payment of union dues. Reimbursement of these employees represents a windfall to them at the expense of their employers.
 
 
 11
 Furthermore, even as applied to the members of other locals and those men not members of any union, we think the remedy is unfair. The order requires the employers, who at most received indirect financial benefit from the unlawful practices, to pay back all of the dues, permit fees and initiation fees collected by the union local. At the same time the primary beneficiary of the unlawful conduct and undeniably the most culpable of the parties, Local 545, has been permitted to retain in its treasury the funds unlawfully exacted by it. In this respect the present case is distinguishable from Virginia Electric & Power Co. v. N.L.R.B., supra, where the company was required to reimburse employees for dues it had itself unlawfully exacted through the company union as a condition of employment. Moreover, adoption of the reimbursement remedy in the present case was contrary to a policy announced by the N.L.R.B.'s General Counsel prior to the bringing of this proceeding. In spite of this stated policy declaration of a moratorium on the use of the Brown-Olds remedy, the General Counsel in his exceptions to the Trial Examiner's intermediate report specifically objected to the Examiner's refusal to impose the reimbursement remedy in this case. While, of course, the Board is not bound by the policy announced by the General Counsel, his statements and the probable reliance of the petitioners upon them should certainly have been given weight by the Board in deciding what remedy was appropriate.
 
 
 12
 Under these circumstances imposition of the reimbursement remedy seems to us inappropriate and arbitrary. Accordingly, the order of the Board is modified by striking out the provisions in paragraph 2, relating to reimbursement, and as thus modified, enforcement of the order is granted.
 
 
 
 [1]
 The pertinent provisions of section 8 of the Act, 29 U.S.C.A. 158, provide:
 '(a) It shall be an unfair labor practice
 '(1) to interfere with, restrain, or coerce
 '(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
 '(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: * * *'
 
 
 [2]
 Mountain Pacific Chapter of the Associated General Contractors, Inc. et al., 119 N.L.R.B. 893. On appeal this doctrine was rejected by the Ninth Circuit, 270 F.2d 425
 
 
 [3]
 Although a complaint was issued against them, settlement agreements were made with Local 545 and the International Union of Operating Engineers which provided that each would discontinue its unfair labor practices, and contained no reimbursement provision. The petitioners were offered a similar settlement but declined it
 
 
 [4]
 Mr. Coville testified that 'since that time (the first two years) we have had a lot of applications' for membership
 
 
 [5]
 N.L.R.B. v. International Brotherhood, 2 Cir., 232 F.2d 393, 396, certiorari denied 352 U.S. 909, 77 S.Ct. 148, 1 L.Ed.2d 118
 
 
 [6]
 Mr. Armitage testified: 'I told all stewards in all crafts that they weren't to take up any subscription, donation, dues, assessment, dobie, or any such thing on the job,' during working hours. App. 165-166
 
 
 [7]
 See note 2 supra