278 F.2d 896
 NATIONAL LABOR RELATIONS BOARD, Petitioner
v.
UNITED STATES STEEL CORPORATION (AMERICAN BRIDGE DIVISION) and Local Union 542, International Union of Operating Engineers, AFL-CIO, Respondents.
 No. 13011.
 United States Court of Appeals Third Circuit.
 Argued March 8, 1960.
 Decided April 13, 1960.
 Supplemental Opinion May 17, 1960.
 
 Duane Beeson, Washington, D. C. (Stuart Rothman, Gen. Counsel, Thomas J. McDermott, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Standau E. Weinbrecht, Atty., N. L. R. B., Washington, D. C., on the brief), for petitioner.
 W. D. Armour, Pittsburgh, Pa. (John C. Bane, Jr., John G. Wayman, Reed, Smith, Shaw & McClay, Robert Molinar, Pittsburgh, Pa., on the brief), for United States Steel Corp.
 J. Albert Woll, Washington, D. C. (Samuel Fessenden, Charles A. Wolfe, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., on the brief), for Local Union 542, International Union of Operating Engineers, AFL-CIO.
 Before BIGGS, Chief Judge, and GOODRICH, McLAUGHLIN, KALODNER, STALEY, HASTIE and FORMAN, Circuit Judges.
 GOODRICH, Circuit Judge.
 
 
 1
 The National Labor Relations Board in this case petitions for enforcement of an order made by it against both the employer United States Steel Corporation (American Bridge Division) and Local Union 542, International Union of Operating Engineers, AFL-CIO. There is no doubt about jurisdiction of the Board and the Court. The Board has found that the employer violated Sections 8(a) (1) and (3) of the National Labor Relations Act[1] and that the union violated Sections 8(b) (1) (A) and (2) of the Act.[2] The complaint here was started by an employee named Russell who claimed to have been discriminated against in hiring procedures.
 
 
 2
 The facts are fully stated in the opinion of the Board, 122 N.L.R.B. No. 155. We will summarize them very briefly here. There is no formal contract between American Bridge Division of the United States Steel Corporation and Local 542. But it was shown that the provisions of the area-wide contract between Local 542 and various contractor associations in the area have been followed with regard to American Bridge's operations at U. S. Steel's Morrisville, Pennsylvania, plant.
 
 
 3
 One of the provisions of the area-wide contract requires the employer to employ a Master Mechanic whenever seven or more engineers are utilized on any one project. Hiring of operating engineers at the Morrisville plant was performed by the Master Mechanic (a union man) who is a "supervisor" within the meaning of Section 2(11) of the Act.[3] There is sufficient evidence in the record to support the Board's findings that (1) the Master Mechanic (except for two instances) exercised complete control over the selection of operating engineers to be employed, (2) the Master Mechanic secured employees exclusively from the hiring hall maintained by Local 542, and (3) the Master Mechanic was required by the constitution of the International Union and by the by-laws approved by the members of Local 542[4] to hire only those in good standing with the union. Added to these findings is the fact that neither the employer nor the union suggested before the Board that any non-union men were employed by American Bridge at the Morrisville plant.
 
 
 4
 We think the Board was justified in concluding that, as a result of the Master Mechanic's dual capacity as agent for both American Bridge and Local 542, both employer and union were responsible for the hiring procedures employed. It was also justified in concluding that there existed a hiring arrangement which limited employment to union members in good standing with the union. Such a hiring arrangement has often been held to be a violation of the Act.[5]
 
 
 5
 As for Russell himself, the evidence shows that, on three occasions, he was denied employment for which he was qualified. Russell was a member of Local 542 who had been involved in disputes with officials of the Local over the manner in which they conducted union affairs. He contended, and the Board so found, that the union opposed his employment because of these disputes and that he was denied employment on the specific occasions as a result of the operation of the unlawful hiring arrangement.
 
 
 6
 The trial examiner who heard the testimony recommended dismissal of the entire complaint for lack of evidence. But the majority of the Board, one member dissenting, reversed the trial examiner and held the testimony sufficient to uphold the charges made by Russell.[6] Although the evidence to support the Board's findings is not very strong, we think the case is not so weak that we can deny enforcement of the Board's order for lack of evidence.
 
 
 7
 The order for the most part was in the usual form. It directed reimbursement to Russell for any loss of pay he may have suffered during the short period in which it was found that he was discriminated against, and directed the union to withdraw its objections to his employment. It required the posting of the usual notices. While the cease and desist provisions forbidding discrimination went beyond the Morrisville plant of the respondent company, we do not think that there is adequate ground for complaint on this item.
 
 
 8
 This brings us to the controversy presented by the final section of the Board's order. The Board applied what is known as the Brown-Olds formula for relief.[7] It said that the hiring arrangement had the result of "inevitably coercing employees not only to become members in good standing in the Respondent Union, but also to pay the Respondent Union initiation fees, dues and other sums. The payment of such moneys," continued the Board, "thus constituted the price employees had to pay for their jobs in disregard of their statutory rights."
 
 
 9
 Following this line of thought, the order provided that the respondent employer and the respondent union:
 
 
 10
 "shall jointly and severally reimburse all present and former employees, of Respondent Company, who have unlawfully been required to pay initiation fees, dues, or other money, to the Respondent Union in order to secure or retain employment with the Respondent Company under the illegal hiring arrangement between the Respondents during the period beginning 6 months before the filing and service upon the Respondents of the charges in this proceeding, in the manner set forth in the section of this Decision entitled `The Remedy.'"
 
 
 11
 One of the subsidiary attacks which the union makes on this order is that the Board refused to reopen the case and permit the union to offer testimony from employees that they were not coerced. Counsel for the Board, in argument here, says the reason for that refusal was that the evidence would be irrelevant. The union says that this shows that the Board's premise is that "no working man would join a labor union and pay dues to it unless he was compelled to do so by a closed shop agreement or practice." Counsel for the Board conceded that the presumption of coercion is a conclusive one once the unfair labor practice is shown.
 
 
 12
 We think it is helpful in the discussion of the question here to set aside one situation where it has been held that a broad dues-reimbursement order is proper. Where the unfair labor practice consists of employer-domination in the creation of a union, the imposition of such reimbursement has been approved by the Supreme Court. Virginia Electric & Power Co. v. N. L. R. B., 1943, 319 U.S. 533, 63 S.Ct. 1214, 87 L.Ed. 1568. In such a situation reimbursement is proper because the union is an illegitimate union from the beginning. Its existence is illegal. The dues themselves are the fruits of the unfair labor practice for, in the absence of the unlawful practice, there would have been no union; a fortiori, there would have been no dues paid to it. Reimbursement is simply a way of pulling the unlawful organization up by the roots. An analogous situation is the annulment of a marriage.
 
 
 13
 In a recent case,[8] the Court of Appeals for the Ninth Circuit drew a clear distinction between the situation of five young athletes who were forced to join a union and pay dues as a condition of employment and the remainder of the employees concerning whom there was no evidence of coercion. The Court permitted reimbursement of dues to the five who had been coerced; it denied it to the others.[9] In this case the court also enforced the reimbursement provision against the employer. We are not committing ourselves on this point. Cf. Morrison-Knudsen Co. v. N. L. R. B., 2 Cir.1960, 275 F.2d 914.
 
 
 14
 In the case before us there was no evidence that any employee was coerced. Even Russell, around whom all the controversy centered, was not coerced into joining the union. Rather he was dissatisfied with the way the union was being run.
 
 
 15
 In this case, too, the suggestion of the Brown-Olds remedy was not made in the complaint. It was not advised by the trial examiner; he, having recommended dismissal of the complaint, never reached the question of the remedy. It was not noted in General Counsel's exceptions to the trial examiner's report nor presented by the General Counsel to the Board. In other words, the imposition of the reimbursement order was the Board's own idea.
 
 
 16
 In passing on the validity of any order of the Board requiring affirmative action, we must always bear in mind two basic propositions: (1) The Board can only order such affirmative relief as will "effectuate the policies" of the Act;[10] (2) This power of the Board is remedial.
 
 
 17
 But to order a union to reimburse dues which it would have collected even if it had not committed an unfair labor practice appears to be nothing more than a fine which, in this instance, is paid into private, rather than public, coffers.
 
 
 18
 Argument for the Board urges that the imposition of this reimbursement remedy will serve as a deterrent against unfair labor practices by both employer and union. That well may be; when one looks at the constitution of the union and sees what it costs to join it, reimbursement of dues and fees could well be a terrific deterrent if this is a union where members are frequently initiated. It appears in one of General Counsel's exhibits that the initiation fee into Local 542 is $200.00 "plus any and all fees or tax required by the Local or the International Union." Imposition of fines or jail sentences upon employers or unions who are guilty of unfair labor practices would also be a deterrent, so far as such sanctions can act as a deterrent. But a fine is clearly the imposition of a penalty and the Labor Board is not authorized to impose penalties. "The Act does not prescribe penalties or fines in vindication of public rights. * * *" Republic Steel Corp. v. N. L. R. B., 1940, 311 U.S. 7, 10, 61 S.Ct. 77, 79, 85 L.Ed. 6. "[I]t is not enough to justify the Board's requirements to say that they would have the effect of deterring persons from violating the Act. That argument proves too much, for if such a deterrent effect is sufficient to sustain an order of the Board, it would be free to set up any system of penalties which it would deem adequate to that end." Id., 311 U.S. at page 12, 61 S.Ct. at page 79.[11]
 
 
 19
 The reimbursement order here was a very broad one. It was not limited to employees who had been coerced. Nor was there any coercion shown against anyone. The order was not limited to the employees at the Morrisville plant of the American Bridge Division where the alleged unfair labor practices occurred. It ran as to all members of Local 542 employed by American Bridge, providing for reimbursement of initiation fees and dues dating back six months before the complaint was filed. The record is devoid of any information as to how many members there are in Local 542, when they joined and how many are employed at the Morrisville or other American Bridge Division plants. This shows, we think, that the reimbursement order was a shotgun blast, and not related to any aspect of this case. That is not the way equity acts in moulding relief to fit the situation before Court or Board.[12]
 
 
 20
 We think that the reimbursement order in this case is characterized the way Judge Staley characterized a similar order in N. L. R. B. v. American Dredging Co., 3 Cir., 1960, 276 F.2d 286, 288, where he said:
 
 
 21
 "In the circumstances of this case, we cannot perceive how reimbursing employees who the evidence shows were all union members for initiation fees, dues and other monies paid to the union could in any way effectuate the policies of the Act. This case involves preferment of union members for employment, and thus it is incomprehensible to us how reimbursing them for initiation fees, dues payments, etc., paid to their union can be anything but a windfall to the employees and an unjust penalty to the employer. This was certainly no purpose of the National Labor Relations Act."
 
 
 22
 The problem of Brown-Olds reimbursement has occupied attention of the courts in the various circuits a great deal during the last few months. We recognize the existence of a recent view contrary to that which is expressed here in N. L. R. B. v. Local 60, United Brotherhood of Carpenters, 7 Cir., 1960, 273 F.2d 699. But, opposed to the Seventh Circuit view, there is a growing body of authority, some of it very forcefully and clearly written, supporting our views. See N. L. R. B. v. Local Union No. 85, Sheet Metal Workers, 5 Cir., 1960, 274 F.2d 344; Local 357, Teamsters etc. v. N. L. R. B., D.C.Cir., 1960, 275 F.2d 646; Morrison-Knudsen Co. v. N. L. R. B., 9 Cir., 1960, 276 F.2d 63; Morrison-Knudsen Co. v. N. L. R. B., 2 Cir., 1960, 275 F.2d 914; Building Material Teamsters, Local 282 v. N. L. R. B., 2 Cir., 1960, 275 F.2d 909.
 
 
 23
 For a summary of the cases in the various Courts of Appeals involving this remedy see appendix attached hereto.
 
 
 24
 The order of the Board will be enforced but with deletion of the paragraph quoted above relating to the reimbursement order.
 
 
 25
 Appendix.
 
 
 26
 Since the Supreme Court decision in Virginia Electric, supra, numerous cases have arisen in the several Courts of Appeals involving the question of the validity of a broad dues-reimbursement order in fact situations other than the type found to be present in that case. The decisions seem to be hopelessly in conflict. A court-by-court analysis indicates the following:
 
 
 27
 First Circuit — No decisions on point. Cf. N. L. R. B. v. Local 404, Teamsters, 1953, 205 F.2d 99, enforcing a remedy providing for dues reimbursement to 31 employees shown to have been specifically coerced.
 
 
 28
 Second Circuit — The broad remedy is specifically disapproved as applied to employers. Morrison-Knudsen Co. v. N. L. R. B., 1960, 275 F.2d 914. It is also disapproved against unions, although there is an intimation that it might be permissible to order a union to reimburse dues to all the employees upon a showing of actual coercion of only some. N. L. R. B. v. Adhesive Products Corp., 1958, 258 F.2d 403; Building Material Teamsters, Local 282 v. N. L. R. B., 2 Cir., 1960, 275 F.2d 909.
 
 
 29
 Third Circuit — No decisions on point prior to American Dredging and the instant case. Cf. N. L. R. B. v. Local 420, Plumbers, 1956, 239 F.2d 327, enforcing an order providing for reimbursement of "permit" fees to certain individuals shown to have been specifically coerced. In N. L. R. B. v. Spiewak, 1950, 179 F.2d 695, a Brown-Olds order was approved, but the point was not argued by counsel. In this case a company-assisted union was involved together with a closed shop agreement.
 
 
 30
 Fourth Circuit — No decisions on point. Cf. Virginia Electric & Power Co. v. N. L. R. B., 1942, 132 F.2d 390, affirmed 1943, 319 U.S. 533, 63 S. Ct. 1214, 87 L.Ed. 1568. The Supreme Court opinion in this case is the starting point in the analysis here. See also N. L. R. B. v. Baltimore Transit Co., 140 F.2d 51, certiorari denied 1944, 321 U.S. 795, 64 S.Ct. 848, 88 L.Ed. 1084, enforcing the broad remedy in a Virginia Electric type situation.
 
 
 31
 Fifth Circuit — Dictum in N. L. R. B. v. McGough Bakeries Corp., 1946, 153 F.2d 420, 425, indicated apparent disapproval of the broad reimbursement order. However, in later cases the court sustained the remedy, N. L. R. B. v. Parker Bros., 1954, 209 F.2d 278, Dixie Bedding Co. v. N. L. R. B., 1959, 268 F.2d 901, although it refused to enforce it in a case where there was no closed shop contract and most of the members of the union testified that they had joined voluntarily and had not been coerced, N. L. R. B. v. Braswell Motor Freight Lines, 209 F.2d 622, as modified 1954, 213 F.2d 208. However, in N. L. R. B. v. Local No. 85, Sheet Metal Workers, 1960, 274 F. 2d 344, 347, the court disapproved of the broad dues-reimbursement remedy "in the absence of some proof that dues would not have been paid but for the requirement" of union membership as a condition of employment. McGough Bakeries, Parker Bros., Dixie Bedding, and Braswell Motor all involved orders directed at the employer only. In Local No. 85, the order was directed against the union only.
 
 
 32
 Sixth Circuit — No decisions on point.
 
 
 33
 Seventh Circuit — The court refused to enforce the broad dues-reimbursement remedy (directed at the employer only) in a situation where, although there was employer sponsorship and support of the union, there was no closed or union shop and non-union workers were not discriminated against. N. L. R. B. v. Shedd-Brown Mfg. Co., 1954, 213 F.2d 163. However, it upheld a broad dues-reimbursement remedy directed at the union only where there was an illegal closed shop arrangement. N. L. R. B. v. Local 60, Carpenters, 1960, 273 F.2d 699. Apparently the Board in the latter case did not argue in terms of a "conclusive presumption" as it does here, for the court talks about the burden of proof being on the union to show that the employees would have remained in the union even without the unlawful discrimination. 273 F. 2d at page 703.
 
 
 34
 Eighth Circuit — No decisions on point. Cf. Donnelly Garment Co. v. N. L. R. B., 1948, 165 F.2d 940, enforcing the broad remedy in a Virginia Electric type situation.
 
 
 35
 Ninth Circuit — The broad dues-reimbursement remedy is specifically disapproved as against both union and employer. Morrison-Knudsen Co. v. N. L. R. B., 1960, 276 F.2d 63.
 
 
 36
 Tenth Circuit — The broad dues-reimbursement remedy is specifically approved as against both union and employer. N. L. R. B. v. Broderick Wood Products Co., 1958, 261 F.2d 548; N. L. R. B. v. General Drivers Local No. 886, 1959, 264 F.2d 21.
 
 
 37
 District of Columbia Circuit — In Local Lodge No. 1424, IAM v. N. L. R. B., 105 U.S.App.D.C. 102, 264 F.2d 575, certiorari granted 1959, 360 U.S. 916, 79 S.Ct. 1432, 3 L.Ed.2d 1532, the court specifically approved of the broad remedy as against both union and employer. However, in Local 357, Teamsters v. N. L. R. B., 1960, 275 F.2d 646, a different panel, in a per curiam opinion, specifically disapproved of the broad remedy where it was directed against the union only.
 
 
 38
 The eleven cases decided prior to Virginia Electric are listed in a footnote to that opinion. 319 U.S. at page 534, 63 S.Ct. at page 1215, note 1.
 
 
 
 Notes:
 
 
 [1]
 29 U.S.C.A. § 158(a) (1) and (3)
 
 
 [2]
 29 U.S.C.A. § 158(b) (1) (A) and (2)
 
 
 [3]
 29 U.S.C.A. § 152(11)
 
 
 [4]
 The union contends that the proposed by-laws of Local 542 were never technically put into effect since Local 542 had no officers but was under the direct supervision of the International. Even if we accept that contention, it does not follow that the by-laws are immaterial. A majority of the members of Local 542 approved the by-laws and, in light of the facts shown, the Board was entitled to conclude that the Master Mechanic and other members of Local 542 followed them whether or not the International recognized them as being in effect
 
 
 [5]
 See N.L.R.B. v. Philadelphia Iron Works, 3 Cir., 1954, 211 F.2d 937, 943, and cases cited therein. See also N.L.R.B. v. Local 420, Plumbers, 3 Cir., 1956, 239 F.2d 327, 330
 
 
 [6]
 Member Bean dissented only on the question of discrimination in denying employment to Russell. He agreed with the majority that the respondents violated the Act by maintaining the unlawful hiring arrangement
 
 
 [7]
 The remedy derives its name from the case of United Ass'n of Journeymen and Apprentices of Plumbing and Pipe Fitting Industry, etc. and J. S. Brown-E. F. Olds Plumbing and Heating Corp., 115 N.L.R.B. 594 (1956)
 There are presently before this Court four other cases involving Brown-Olds remedies: N.L.R.B. v. American Dredging Co., 3 Cir., 276 F.2d 286 (sur petition for rehearing); N. L. R. B. v. Local 1566, ILA, 3 Cir., 278 F.2d 883 (argued Nov. 16, 1959); N. L. R. B. v. Lakeland Bus Lines, Inc. and Lakeland Bus Operators Ass'n, 3 Cir., 278 F.2d 888; Paul M. O'Neill Int'l Detective Agency v. N.L. R.B., ___ F.2d ___ (argued March 7, 1960).
 
 
 [8]
 Morrison-Knudsen Co. v. N.L.R.B., 9th Cir., 1960, 276 F.2d 63
 
 
 [9]
 We have already recognized that ordering a union to refund dues to those members who were actually coerced into joining or remaining in the union is an appropriate remedy. See N.L.R.B. v. Local 420, Plumbers, 3 Cir., 1956, 239 F.2d 327, 331
 
 
 [10]
 "If * * * the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any * * * unfair labor practice, then the Board shall * * * issue * * * an order requiring such person to cease and desist from such unfair labor practice,and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter * * *." 29 U.S.C.A. § 160 (c) (emphasis added).
 The policies of the Act, as stated in § 1, 29 U.S.C.A. § 151, are the encouragement of "the practice and procedure of collective bargaining and * * * [the protection of] the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection."
 
 
 [11]
 See also Consolidated Edison Co. of New York v. N.L.R.B., 1938, 305 U.S. 197, 235-236, 59 S.Ct. 206, 83 L.Ed. 126
 
 
 [12]
 "The powers conferred upon this court by the National Labor Relations Act to enforce the orders of the Board are equitable in nature and may be invoked only if the relief sought is consistent with the principles of equity." N.L.R.B. v. National Biscuit Co., 3 Cir., 1950, 185 F.2d 123, 124. See also N.L.R.B. v. Globe Automatic Sprinkler Co., 3 Cir., 1952, 199 F.2d 64. 70
 
 
 
 39
 BIGGS, Chief Judge (concurring in part and dissenting in part).
 
 
 40
 The facts in this case as developed by the Board and by the majority opinion demonstrate circumstances under which preferential hiring of union employees could be and probably was effected by the Union and the Company. But the record is devoid of evidence which shows that such preferential hiring did take place. The Board and this court have substituted a plausible assumption for proof of preferential hiring. It is not sufficient to prove, as the Board has done here, that a facile arrangement existed whereby the Union and the Company could have effected preferential hiring of the Union's members. For this reason I dissent from that portion of the majority opinion which supports the Board's order respecting the alleged preferential hiring. But had preferential hiring been proved I would concur in the majority view as to the application of the "Brown-Olds" remedy.
 
 
 41
 I agree with the majority's conclusions as to the relief to be granted to Russell.
 
 Supplemental Opinion
 
 42
 PER CURIAM.
 
 
 43
 The National Labor Relations Board has submitted a form of decree carrying out this Court's decision in the above entitled case in which the opinion was filed on April 13, 1960. Since our opinion was filed the United States Supreme Court has entered its decision in the case of Communications Workers of America, v. N. L. R. B., 1960, 362 U.S. 479, 80 S. Ct. 838, 840, 4 L.Ed.2d 896. In that decision the Supreme Court held that it was proper to eliminate from a decree enforcing a Board order against a union broad terms like "in any manner" and "or any other employer" when the complaint was directed against the union's conduct with respect to one employer and one type of unfair labor practice.
 
 
 44
 We think the objection of both union and employer to the decree submitted by the Board is well taken in view of this Supreme Court decision. The decree as entered will delete from both the required notice and the order the terms "or any other employer over whom the Board will assert jurisdiction," "or any other labor organization," "or any other employee or applicant for employment," "or by discriminating in any other manner in respect to the hire or tenure of employment, or any term or condition of employment."
 
 
 45
 The sections of the decree affected by this opinion are as follows: I(a) (1), I(a) (2), I(a) (3), II(a) (1), II(a) (2), and II(a) (3). Also affected are paragraphs (2) and (3) of the Notice required to be posted by the employer and paragraphs (1) and (2) of the Notice required to be posted by the union.